**UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

BHARAT KUMAR PATEL;                          )
HIRALBEN A PATEL,                             )
5903 NW Favian Ave                            )
  Port Saint Lucie, FL  34986                 )
                                              )
                    Plaintiff(s)              )        Civil Action No.
                                              )
            v.                                )
                                              )
KRISTI NOEM, in her official capacity,        )
Secretary, U.S. Department of Homeland        )
Security;                                     )
KIKA SCOTT, in her official capacity,         )
Director, U.S. Citizenship and Immigration    )
Services;                                     )
    2707 Martin Luther King Jr. Ave, SE       )
    Washington, DC 20528-0485                 )
                                              )
PAM BONDI, in her official capacity,          )
Attorney General, Office of Attorney General, )
U.S. Department of Justice;                    )
    950 Pennsylvania Avenue, NW               )
    Washington, DC 20530-0001                 )
                                              )
                    Defendant(s).             )
                                              )

_____

**PLAINTIFF'S ORIGINAL COMPLAINT FOR WRIT IN THE NATURE OF**
**MANDAMUS AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

Joseph Milburn, Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 3701 W. Algonquin

Road, Suite 630, Rolling Meadows, IL 60008, Ph: (312) 767-9030, Facsimile: (312) 767-9030,

Email: joe@jeelani-law.com, and Gabriela Perez-Dumois, Local Counsel for Plaintiff, of

Blacksten, Zelaya, & Perez, 2514 Hollywood Blvd., Suite 308, Hollywood, Florida 33020,

Tel./Fax.: (754) 799-4400, Email: gpd@bzplegal.com, of Counsel for the Jeelani Law Firm.

## INTRODUCTION

COME NOW BHARATKUMAR JASHBHAI PATEL (hereinafter "Plaintiff BHARATKUMAR" or collectively "Plaintiffs") and HIRALBEN A PATEL (hereinafter "Plaintiff HIIRALBEN" or collectively "Plaintiffs"), by and through the undersigned attorney, in the above cause, and states as follows:

1.      Plaintiff BHARATKUMAR and Plaintiff HIRALBEN are citizens of India. Plaintiff BHARATKUMAR  is the victim of qualifying criminal activity in the United States, making him eligible for filing Form I-918, Petition for U Nonimmigrant Status.[1] Furthermore, Plaintiff HIRALBEN as his spouse and qualifying derivative family member is also eligible to apply for the same relief.[2]

2.      In creating the U visa, Congress sought to incentivize noncitizen victims to engage with law enforcement, thereby strengthening public safety through increased cooperation. The U-visa is available to noncitizens who have been victims of certain serious qualifying crimes, provided they report the crime to law enforcement and cooperate in the subsequent investigation or prosecution thereof. However, the efficacy of the U visa program is contingent upon the timely provision of protection. If a noncitizen victim remains in legal limbo for an extended period of time after reporting a crime, this delay ultimately undermines the program's intended purpose.

3.      Plaintiff BHARATKUMAR has brought the instant action seeking a writ of mandamus to compel the United States Citizenship and Immigration Services ("USCIS") to fulfill its long-standing legal obligations under the Immigration and Nationality Act ("INA"), the

---

[1] Individuals who are victims of certain qualifying criminal activity, have suffered substantial mental or physical abuse and are helpful or are likely to be helpful to law enforcement or government officials in the investigation or prosecution of criminal activity are eligible to apply for a U Nonimmigrant visa.

[2] As the spouse and qualifying family member of Plaintiff BHARATKUMAR, Plaintiff HIIRALBEN is eligible to apply for a U visa. However, because BHARATKUMAR is the principal U visa petitioner, USCIS must first approve his petition before any family members can qualify for a derivative U visa.

Administrative Procedure Act ("APA"), and the Due Process Clause of the United States Constitution. Although Plaintiff BHARATKUMAR is a victim of qualifying criminal activity that occurred before 2009, the Defendants' failure to implement the U visa program in a timely manner has unjustly deprived the Plaintiff of the opportunity to obtain critical immigration relief.

4.   Plaintiff filed his Form I-918 Petition for U Nonimmigrant Status on November 18, 2022 approximately seventeen years after the last incident or qualifying criminal activity occurred. This delay resulted from the widespread lack of awareness about the U visa program among law enforcement, other government entities, and the Plaintiff himself—an issue directly tied to the Defendants' failure to timely promulgate the necessary implementing regulations. The delay in considering the Plaintiff's U visa eligibility has been further aggravated by the Defendants' prolonged inaction, having failed to issue the required regulations for more than seven years after the program was established by Congress. In fact, it was not until 2009 that the Defendants began granting U visa status to eligible applicants, despite Congress explicitly directing Defendants to promulgate regulations to implement the U visa program no later than 180 days after the date of enactment. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, § 828 (2006). Due to the annual statutory cap on U-visas and the substantial backlog of petitions, the Plaintiffs' eligibility may remain in limbo for many years absent judicial intervention. Plaintiffs' Petitions have now been in pending status since November 18, 2022, for period of over two years and five months (over 29 months or 897 days)—since the petitions were filed, despite the fact that the qualifying criminal activity occurred more than seventeen years ago, between approximately 2003 and 2005. Accordingly, Plaintiffs are entitled to receive a decision on their respective Petitions or in

the alternative, placement on the U visa waitlist allowing for their Petitions to be prioritized if their case is still pending at the beginning of the next fiscal year.[3]

5.     Defendants cannot reasonably continue to use COVID-19 as a defense to their failure to adjudicate the Petitions as all USCIS Field Offices are fully operational at this time; as such, COVID-19 related issues do not prohibit an officer's issuance of a decision in this matter.

6.     Defendants are in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. and have violated Plaintiffs' due process rights as guaranteed by the United Sates Constitution. As such, this action is brought to compel Defendants, and those acting under them, to take action on Plaintiffs' respective Petitions.

## PARTIES

7.     Plaintiff  BHARATKUMAR JASHBHAI PATEL is a citizen of India and for purposes of this action he is a resident of St. Lucie County, Florida. He is the petitioner of a properly filed Form I-918, Petition for U Nonimmigrant Status and he is eligible for a final decision by USCIS. (Receipt #EAC2309551030).

8.     Plaintiff HIRALBEN A PATEL is a citizen of India and for purposes of the instant action, she is a resident of St. Lucie County, Florida. She is the petitioner of a properly filed Form I-918A, Petition for U Nonimmigrant Status and she is eligible for a final decision by USCIS. (Receipt #EAC2309551044).

---

[3]  As of June 14, 2021, USCIS was given the discretionary authority to provide employment authorization to certain noncitizens with bona fide pending U visa nonimmigrant petitions in order to address the significant backlog of U-visa cases and the annual cap on U-visas. In order to exercise its discretionary authority, USCIS implemented the bona fide determination process through which certain eligible petitioners can receive a bona fide determination employment authorization document (BFD EAD) and deferred action. The first step in the process is for USCIS to determine whether the pending petition is bona fide (that is to determine whether the petitioner has properly filed a complete I-918 Petition, an I-918 Supplement B, certification, a personal statement describing the incident involving the qualifying criminal activity, and USCIS has received the petitioner's background and security checks from the petitioner's biometrics), and thereafter grant the petitioner with an employment authorization card. Once the BFD EAD is granted, USCIS may also exercise its discretion in granting deferred action to the petitioner. Deferred action is for the same duration of validity as the BFD EAD (four years). If the petitioner is not granted the BFD EAD, the petition is assessed for eligibility for the Waiting List Placement and thereafter final adjudication. Plaintiff has received a bona fide determination and now awaits a full and final adjudication of his Petition.

9.      Defendant KRISTI NOEM is the Secretary of the United States Department of Homeland Security (hereinafter "DHS"). This action is filed against her in her official capacity. Defendant NOEM is responsible for the enforcement of the INA and for the delegation of adjudicatory and discretionary authority to other employees of the DHS and USCIS pursuant to 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.

10.     Defendant KIKA SCOTT is the Director of USCIS; she is an official generally charged with supervisory authority over all operations of USCIS under 8 C.F.R. § 103.1. This action is filed against her in her official capacity.

11.     Defendant PAM BONDI is the Attorney General of the United States; she is an official generally charged with supervisory authority over all operations of the Department of Justice (hereinafter "DOJ") under 28 C.F.R. § 0.5.   This action is filed against her in her official capacity.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction to hear this complaint, and the claims stated herein by virtue of 8 U.S.C. §§ 1101 et seq. Furthermore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, § 1361 and §2201-02 because this is a federal mandamus action brought to compel Defendants to perform their statutory duties owed to the Plaintiff. This Court has additional jurisdiction by virtue of the Administrative Procedures Act, 5 U.S.C. §§ 701-706, because Plaintiff is seeking judicial review of inaction by one or more of the Defendants.

13.     Venue is proper in the District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(e) in that this is the district in which Plaintiff resides, and no real property is at issue in the instant case.

## BACKGROUND

### I.        THE U VISA

14.     In 2000, as part of the Victims of Trafficking and Violence Protection Act ("VTVPA"), Congress created the U nonimmigrant visa ("U visa") to provide immigration relief to noncitizen victims of certain serious crimes who have suffered substantial harm and assist law enforcement in the investigation or prosecution of those crimes. Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533 (2000) (codified at 8 U.S.C. § 1101 (note)).

15.     The U visa serves a dual purpose: to encourage noncitizen victims to report crimes and engage in the criminal justice process without fear of immigration-related consequences, and to enhance public safety by supporting law enforcement in the investigation and prosecution of serious crimes—aligning with the humanitarian values of the United States.

16.     Recognizing the societal benefits of empowering noncitizen survivors to come forward, Congress emphasized that both noncitizens and U.S. citizens would benefit when victims—whether of intimate partner violence or other serious crimes—are able to report offenses and fully participate in investigations and prosecutions without fear of adverse immigration repercussions. See *Victims of Trafficking and Violence Protection Act of 2000 (VTVPA)*, Pub. L. No. 106-386, § 1513(a)(1)(B), 114 Stat. at 1533.

17.     However, Congress simultaneously imposed an annual cap of 10,000 U visas for principal applicants, excluding derivative family members. 8 U.S.C. § 1184(p)(2)(A)–(B).

18.     Noncitizens may apply for a U visa if they have been victims of a qualifying serious

crime—or an attempt, conspiracy, or solicitation to commit such a crime—within the United States. *Id.* § 1101(a)(15)(U)(iii).[4]

19.     Additionally, any "similar activity in violation of Federal, State, or local criminal law" may serve as a basis for U visa eligibility. *Id.*

20.      To be eligible for a U visa, noncitizen victims—and their qualifying family members must show that they suffered substantial physical or mental abuse resulting from the crime, possess knowledge about the crime, and have been, are, or are likely to be helpful to law enforcement in its investigation or prosecution. *Id.* § 1101(a)(15)(U)(i)-(ii).

21.     To satisfy the cooperation requirement, applicants must obtain a certification from a Federal, State, or local law enforcement agency confirming their past, present, or anticipated assistance. *Id.* § 1184(p)(1).

22.      Applicants may also request a waiver of any applicable grounds of inadmissibility from USCIS, which may grant such waivers if it determines doing so is in the public or national interest. *Id.* § 1182(d)(14).

23.      Congress intended that U visa petitioners receive relief without delay, noting that the program was created to provide "law enforcement with a mechanism to regularize the immigration status of cooperating individuals during criminal investigations or prosecutions." See Pub. L. No. 106-386, § 1502(a)(2)(B), 114 Stat. at 1464.

24.     A U visa is generally valid for four years. 8 U.S.C. § 1184(p)(6).

---

[4] Under the U-visa, USCIS recognizes the following crimes as being qualifying crimes for the purpose of being eligible for u-visa: Rape; Torture; Trafficking; Incest; Domestic violence; Sexual assault; Abusive sexual contact; Prostitution; Sexual exploitation; Stalking; Female genital mutilation; Being held hostage; Peonage; Involuntary servitude; Slave trade; Kidnapping; Abduction; Unlawful criminal restraint; False imprisonment; Blackmail; Extortion; Manslaughter; Murder; Felonious assault; Witness tampering; Obstruction of justice Perjury; and Fraud in foreign labor contracting.

25.     During that period, both principal petitioners and derivative beneficiaries are authorized to work in the United States. *Id.* § 1184(p)(3).

26.     Additionally, individuals in U visa status—whether principal or derivative—who have continuously resided in the U.S. for at least three years may apply to adjust their status and obtain lawful permanent residency (a "green card"). *Id.* § 1255(m)(1).

## DEFENDANTS' UNREASONABLE DELAY

### A.  Defendants Unreasonable Delay in Implementing the Required Regulations Within 180 days

25.     Congress enacted the statutory provisions establishing the U visa in 2000, with those provisions taking immediate effect upon enactment. *See*, Michael D. Cronin, *Victims of Trafficking and Violence Prevention Act of 2000 (VTVPA) Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas* 2 (Aug. 30, 2001).

26.     The Immigration and Naturalization Service ("INS"), the predecessor agency to the current Defendants, promptly acknowledged that the creation of the U visa reflected the United States' government's commitment to vigorously protecting victims of serious crimes. *Id.* at 1. The INS explicitly recognized Congress's dual objectives: to enhance law enforcement efforts and to safeguard noncitizen victims of criminal activity in the United States. *Id.* at 1 n.3.

27.     Nevertheless, despite clear statutory mandates, the Defendants failed to issue the necessary implementing regulations for the U visa program for over seven years. See USCIS, *New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status*, 72 Fed. Reg. 53,014 (Sept. 17, 2007). In fact, temporary protection from removal for potentially eligible individuals was not made available until 2007, and the adjudication of U visa petitions and the granting of U visa status did not begin until fiscal year 2009—by which time petitions were already subject to the annual cap of 10,000 visas.

**B.  Defendants' Ongoing Delays in Adjudicating U-Visa Petitions and the Waitlist Process**

28.      After the U visa program was implemented in 2007 with the issuance of regulations, the number of petitions for U nonimmigrant status quickly surpassed the annual statutory cap of 10,000.

29.      Given the significant volume of petitions, and the need to provide stability for victims cooperating with law enforcement, USCIS implemented a regulatory waiting list process. Under this system, once the annual statutory numerical cap is reached in a given fiscal year, all pending and newly submitted petitions are reviewed to determine eligibility for the waitlist or to receive a bona fide determination, even though final approval may be delayed due to the cap. *Id.*

30.      USCIS places eligible applicants for a U visa on a waitlist when the annual statutory cap of 10,000 U visas for principal petitioners (Form I-918) has been reached. If an applicant is found to be eligible for U nonimmigrant status but a visa is not immediately available due to this cap, USCIS may place the applicant on a waitlist.

31.      In determining whether a petitioner qualifies for placement on the waitlist, USCIS conducts an initial adjudication of the petitioner's eligibility for a U visa. Being placed on the waitlist means that USCIS has determined the applicant meets all the eligibility requirements for a U visa, but must wait until a visa becomes available at the beginning of the next fiscal year. See *USCIS Policy Manual*, vol. 3, part C, Ch. 6.

32.      The process involves reviewing the submitted forms for completeness, assessing supporting documentation, and conducting a criminal background check. It also includes checking DHS and other government databases, verifying cooperation with law enforcement when needed, and evaluating any inadmissibility grounds. If applicable, a waiver application is considered, requiring additional evidence. If the initial submission is incomplete, a Request for

Evidence or Notice of Intent to Deny is issued, outlining deficiencies and requesting further documentation. Petitioners have up to 90 days to respond, after which a final determination is made.

33.    Once placed on the waitlist, USCIS provides petitioners and their eligible family members with protection from removal through deferred action or parole, as outlined in 8 C.F.R. § 214.14(d)(2). Furthermore, being placed on the waitlist permits petitioners and their derivatives to obtain work authorization while awaiting a final decision on their U visa application. See *Id.* § 274a.12(c)(11) & (14).

34.    Pursuant to applicable regulations, USCIS must place all eligible petitioners on the waitlist if they satisfy the statutory criteria but cannot be granted U visa status solely because the annual cap has been reached. See 8 C.F.R. § 214.14(d)(2). This requirement is essential, as petitioners not placed on the waitlist are ineligible for deferred action and employment authorization. *Id.* § 214.14(d)(2).

35.    USCIS originally committed to adjudicating U visa petitions within six months. See *USCIS Response to the Citizenship and Immigration Service Ombudsman's (CISOMB) 2012 Annual Report to Congress* at 5.5. This timeline reflected Congress's intent to provide prompt relief and protection to U visa petitioners.

36.    As demand for U visas rapidly surpassed the statutory cap, petitioners have been compelled to wait approximately five years for a final decision on their Form I-918 petitions. See *USCIS, I-918 Petitions*.

37.    Furthermore, USCIS did not fulfill its obligation to place all eligible petitioners on the waitlist. For instance, in fiscal year 2018, USCIS placed only 7,421 principal U visa petitioners

on the waiting list—fewer than the number of visas that would become available in the following year. See *USCIS, U Visa Filing Trends 7 (Apr. 2020)*.

38.     Despite efforts to streamline adjudications, processing delays have continued to grow. In fiscal year 2020, the median processing time for Form I-918 petitions was 54.3 months, reaching a peak of over 59.0 months in 2022. As of last year, the average processing time remained lengthy at 46.1 months.[5]

### C. Delay in Implementing the Bona Fide Determination Process

39.     In 2008, Congress amended the Immigration and Nationality Act to make noncitizens with *pending, bona fide* petitions for U nonimmigrant status eligible for work authorization. This change, enacted through the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 201(c), codified at 8 U.S.C. § 1184(p)(6), was intended to ensure that U visa petitioners received timely access to work authorization, thereby helping to offset harms caused by lengthy delays in petition processing.

40.     Importantly, a bona fide determination does not require a full adjudication of the petition. Instead, it involves a preliminary assessment that the petition was submitted in good faith and is not fraudulent, including a review of the applicants submitted filing.

41.     Following a bona fide determination, USCIS exercises discretion to evaluate whether the petitioner presents any national security or public safety concerns. If no such concerns exist, USCIS grants the petitioner deferred action and work authorization for four years, renewable until a final U visa decision is made.

---

[5] See, *https://egov.uscis.gov/processing-times/historic-pt*.

42.     Notably, petitioners who receive a positive bona fide determination are not placed on the waitlist. In practice, this process was intended to replace the waitlist as a mechanism for delivering interim relief more efficiently.

43.     Despite this streamlined approach, USCIS did not implement a bona fide determination process until June 14, 2021—over 12 years after Congress enacted § 1184(p)(6). When launched, USCIS acknowledged the severe consequences of multi-year delays, including financial instability and deterrence of crime victims from cooperating with law enforcement.

44.     The bona fide determination process was designed to be swift and efficient. USCIS is able to determine whether a petition is complete and eligible in a matter of minutes, relying on clearly defined criteria. Background checks are typically initiated within weeks of receipt and often completed within 48 hours. Nevertheless, USCIS's implementation has failed to reduce delays meaningfully.

45.     In 2023, USCIS centralized all bona fide determinations at the new Humanitarian, Adjustment, Removing Conditions, and Travel Documents (HART) Service Center, claiming this would speed up processing. However, by the end of fiscal year 2023, the median time to receive a bona fide determination was 57.5 months—longer than the processing time for full adjudications just a few years earlier.

46.     Even though the number of new U visa petitions has declined in recent years, USCIS has not reduced processing times. The agency itself acknowledges that the current delays undermine the goals of the U visa program—namely, stabilizing victims of crime and supporting law enforcement.

## FACTUAL ALLEGATIONS

### A. Plaintiff's U-Visa

47. Plaintiff has been residing in the U.S. since 2002.

48. Plaintiff was the victim of multiple violent crimes while employed at a convenience store located at the Sunoco gas station and operated by Kings Food Market. These crimes, which included armed robbery and assaults with deadly weapons, occurred on four separate occasions over a period of approximately two and a half years.

49. On or about April 8, 2003, Plaintiff was working at the convenience store when three young black males entered the premises. One of the men brandished a firearm and demanded money and cigarettes. Plaintiff complied with their demands, fearing for his life. The perpetrators fled the scene before law enforcement arrived. This incident was documented in Incident Report No. 20030404271. Plaintiff later made two court appearances in connection with this incident. The crimes were investigated under the charges of robbery (18 Pa.C.S. § 3701(a)(1)(ii)), criminal conspiracy, terroristic threats, and unlawful possession of a firearm.

50. On or about June 4, 2004, while again working at the store, Plaintiff was confronted by an individual dressed in black and armed with a long-barreled firearm, believed to be a shotgun or rifle. The man entered the store and aimed the weapon at Plaintiff and two co-workers, threatening them with deadly force. When a co-worker failed to open the register, the gunman turned the weapon on Plaintiff, who was then compelled to open the cash register and fill a bag with money and cigarettes. This incident is documented in Incident Report No. 20040602328. Plaintiff recalls appearing in court at least once in relation to this matter.

51. The third incident occurred on or about November 12, 2005, when Plaintiff was inside the store with the manager, Dev Patel. An armed black male entered, shoved a firearm into Mr.

Patel's back, and demanded money. When the assailant noticed Plaintiff behind the register, he pointed the gun directly at him and threatened to shoot unless Plaintiff complied. Plaintiff opened the register and placed the money on the counter, which the perpetrator then took before fleeing. Plaintiff provided a detailed description of the unmasked perpetrator to the police. This event is recorded in Incident Report No. 20051105302. Plaintiff also participated in court proceedings related to this case.

52.     The fourth incident occurred on or about December 29, 2005, when two black males, both masked and dressed in black, entered the convenience store. One carried a pistol, the other a knife. In what was the most traumatic of the robberies, the gunman discharged his firearm within close proximity to Plaintiff's head after demands for money and phone cards escalated. Plaintiff and co-worker, Upendre Patel, complied under extreme duress. Several bullets were fired inside the store, narrowly missing Plaintiff. This incident is recorded in Incident Report No. 20051211761.

53.     Following this incident, Plaintiff resigned from his position at the store and relocated out of state due to the severe emotional trauma he experienced.

54.      In each of the four incidents, the assailants made explicit threats of violence, including direct statements and gestures that communicated the intent to shoot if demands were not met. Plaintiff was placed in immediate and reasonable fear for his life during each occurrence.

55.      Plaintiff consistently cooperated with law enforcement officers, providing detailed descriptions of the suspects and their actions, and appeared in court when requested. Plaintiff was a known and respected member of the local community, often interacting with police officers who frequented the store.

56.    The repeated and violent nature of these crimes, particularly the final incident involving the discharge of a firearm, caused Plaintiff to suffer severe emotional distress, anxiety, and lasting psychological trauma. These experiences ultimately led Plaintiff to leave his employment and relocate in an effort to regain a sense of safety and emotional stability. Moreover, Plaintiff BHARATKUMAR has faced longstanding challenges in securing permanent employment and maintaining a stable income due to the limitations imposed by his unresolved immigration status. Additionally, he is unable to travel to his home country to visit his mother and other relatives.

### B.  Plaintiff has Suffered Irreparable Harm due to Defendants Delay and this Harm Remains Ongoing

57.    Petitioners eligible for U visas but subject to prolonged delays in receiving a bona fide determination endure prolonged uncertainty, economic hardship, and heightened vulnerability. Without work authorization, many are forced to navigate life without legal employment, exposing them to exploitation and deepening financial instability. These delays undermine the protective purpose of the U visa program by placing petitioners at risk of removal—even while cooperating with law enforcement in ongoing investigations or prosecutions.

58.    Work authorization is more than a permit to earn a living; it is often a gateway to essential services and opportunities, including obtaining a Social Security number, accessing higher education, securing health insurance, and—in many states—qualifying for a driver's license. Without these, petitioners face severe barriers to basic mobility, medical care, and long-term stability.

59.    Plaintiff BHARATKUMAR has endured considerable hardships over the past decade. He has struggled to obtain stable employment. These challenges have taken a significant emotional

and mental toll on him. Additionally, Plaintiff continues to live in constant fear of detention and deportation—an anxiety that has intensified under the current administration.

60.    Obtaining legal status in the United States would enable Plaintiff to secure permanent employment and maintain stable income. Additionally, he would be able to travel to his home country to visit his mother and other relatives once he is eligible to apply for his adjustment of status.

61.    Furthermore, instead of encouraging cooperation with law enforcement as Congress intended, the absence of timely adjudication fosters fear of interaction with authorities and the ever-present threat of deportation. These harms are not abstract—they are borne out in the lived experiences of the Plaintiff in this case.

### C.  Procedural History of Plaintiff's U Visa Case

62.    Plaintiff BHARATKUMAR was the victim of qualifying criminal activity between approximately 2003 and 2005.

63.    On November 18, 2022, Plaintiff BHARATKUMAR filed Form I-918, Petition for U Nonimmigrant Status following not one, but four separate incidents in which he was the victim of qualifying criminal activity, rendering him eligible to apply for the above stated benefit. On the same date, his spouse, Plaintiff HIIRALBEN, filed Form I-918A, Petition for U Nonimmigrant Status as a qualifying family member of the principal applicant. **[EXHIBIT A].**

64.    On July 10, 2023, Plaintiff BHARATKUMAR and Plaintiff HIRALBEN appeared for their required biometrics appointment at a designated USCIS Application Support Center. **[EXHIBIT B].**

65.    On January 24, 2025, Plaintiff received communication from USCIS informing him that his Petition for U nonimmigrant status was found to be bona fide and that he warranted a

favorable exercise of discretion to receive employment authorization and deferred action. **[EXHIBIT C].**

66.    Despite the grant of interim relief, Defendants have yet to complete the final adjudication Plaintiff BHARATKUMAR's Petition for U nonimmigrant status.

67.    Where USCIS has made a grant of the BFD EAD and deferred action, the petitioner is considered to have established a prima facie case for approval of the underlying Petition pursuant to INA 237(d)(1).

68.    Plaintiff has endured significant financial and emotional burdens as a result of the unreasonable period of time that his case has been pending without action by USCIS.

69.    Plaintiff BHARATKUMAR has not received a final decision from USCIS regarding his Form I-918 Petition, which as of the date of this filing has now pending for a total period of over two years and five months (over 29 months or 897 days)—and will likely continue to remain in this status without judicial intervention given the annual limit on U visa availability.

## COUNT I

### VIOLATION OF THE APA

### Failure to Adjudicate Plaintiffs' Respective Form I-918 Petitions or in the Alternative to Place Plaintiffs on the Waitlist

70.    All prior paragraphs are re-alleged as if fully stated herein.

71.    Plaintiff BHARATKUMAR has a statutory right to apply for a U Nonimmigrant visa pursuant to 8 C.F.R. 214.14(b).

72.    Defendants have a duty to adjudicate Plaintiff BHARATKUMAR's Petition within a Reasonable period of time under 5 U.S.C. §555(b) or in the alternative place him on the U visa waitlist. 8 C.F.R. § 214.14(d)(2).

73.     Under the Administrative Procedure Act (APA), each federal agency is required to "conclude a matter presented to it . . . within a reasonable time." 5 U.S.C. § 555(b).

74.     The APA grants this Court authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Congress has made clear that immigration benefit applications should be processed within 180 days of their initial filing. 8 U.S.C. § 1571(b). Defendants' failure to adjudicate Plaintiffs' respective petitions within a timely manner constitutes an unreasonable delay in violation of 5 U.S.C. § 555(b).

75.     The duty owed to Plaintiffs is ministerial and so plainly prescribed as to be clear and free from doubt.

76.     No other adequate remedy is available to Plaintiffs.

77.     Defendants have conducted the initial investigation and have sufficient information and documentation about Plaintiffs to complete the adjudication of Plaintiff BHARATKUMAR and Plaintiff HIRALBEN's respective Form I-918 Petitions within the current fiscal year or in the alternative prioritizing their Petitions at the beginning of the next fiscal year by placing them on the U visa waitlist.

78.     Given the Defendants' lack of a reason for not adjudicating Plaintiffs' respective Form I-918 Petitions for over two years and five months (over 29 months or 897 days)—Plaintiffs have been forced to wait for an unreasonably long period of time.

79.     Defendants have failed in their statutory duty to provide a decision as to whether Plaintiff BHARATKUMAR and Plaintiff HIRALBEN are eligible for a U visa within a reasonable period of time and in the alternative to place Plaintiffs on the U visa waitlist.

80.     Defendants have violated the Administrative Procedures Act, 5 U.S.C. § 701 et seq., as they are unlawfully withholding action on Plaintiffs' respective Petitions and have failed to carry

out the adjudicative functions delegated to them by law with regard to Plaintiff BHARATKUMAR and Plaintiff HIRALBEN's case.

81.     Defendants' delay in this case is, as a matter of law, arbitrary, capricious, or otherwise not in accordance with the law. Defendants have willingly and unreasonably delayed and have refused to provide a decision as to Plaintiff's respective Petitions and their eligibility for the grant of a U visa, thereby depriving Plaintiffs of the rights to which they are entitled.

82.     This delay has caused, and will continue to cause, substantial and irreparable harm to Plaintiff BHARATKUMAR and Plaintiff HIRALBEN. In addition, as a result of this delay, Plaintiff has incurred enormous costs and significant attorney's fees.

## COUNT II

### VIOLATION OF THE DUE PROCESS CLAUSE
### Failure to Promulgate the Required Regulations for the Implementation of the U Visa Program

83.     All prior paragraphs are re-alleged as if fully stated herein.

84.     The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of liberty or property without due process of law.

85.     Congress created the U nonimmigrant visa (U visa) program through the Victims of Trafficking and Violence Protection Act of 2000, codified at 8 U.S.C. § 1101(a)(15)(U), to provide protection and immigration relief to noncitizen victims of qualifying crimes who have suffered substantial physical or mental abuse and who are helpful to law enforcement in the investigation or prosecution of criminal activity.

86.     In establishing the U visa program, Congress explicitly delegated authority to the

Department of Homeland Security (DHS) to promulgate regulations necessary to implement and administer the program, as required by law.

87.     Although the original enactment of the Victims of Trafficking and Violence Protection Act did not impose a specific deadline for the issuance of regulations implementing the U visa program, Congress subsequently addressed this omission in the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006). In that legislation, Congress explicitly directed the Defendants to promulgate regulations to implement the U visa program no later than 180 days after the date of enactment. See *Id.* at § 828.

88.     The VAWA Reauthorization Act was signed into law on January 5, 2006, thereby establishing a statutory deadline of July 4, 2006, by which Defendants were legally obligated to issue implementing regulations. This created a clear, mandatory duty that remains unfulfilled.

89.     Nevertheless, Defendants failed to meet this obligation and have not promulgated the necessary regulations to provide a consistent, lawful mechanism for victims of qualifying crimes to apply for and obtain U visas as Congress intended. In lieu of fulfilling this duty, Defendants resorted to a legally undefined and quasi-legal practice of granting certain U visa-eligible applicants a temporary form of relief known as "deferred action."

90.     Deferred action is merely a discretionary decision not to initiate removal proceedings against an individual and does not confer any legal immigration status. It lacks the statutory protections and benefits provided under the U visa program. In contrast, recipients of actual U visas are entitled to meaningful legal rights and benefits, including the ability to obtain employment authorization, travel outside the United States, access social and protective services,

and begin accruing time toward eligibility for lawful permanent residence. See 8 U.S.C. § 1255(m), which provides that U visa holders may apply for lawful permanent resident status after three years of continuous presence in the United States.

91.  DHS's prolonged inaction, compounded by the delayed implementation of governing regulations, unlawfully interfered with Plaintiff's ability to avail himself of the protections and benefits Congress intended.

92.  Defendants' failure to promulgate regulations, despite a clear congressional mandate and

the availability of lawful immigration benefits under the U visa program, continues to harm eligible crime victims and undermines the statutory framework established by Congress.

93.  As a direct and proximate result of DHS's failure to timely promulgate the required regulations, and ongoing delay in adjudicating Plaintiffs' respective Form I-918 Petitions, or in the alternative, placing Plaintiff BHARATKUMAR and Plaintiff HIRALBEN on the U visa waitlist, guaranteeing the prioritization of their respective Petitions, Plaintiffs have suffered and continue to suffer significant harm, including prolonged uncertainty, inadequate employment opportunity, emotional and psychological distress, and vulnerability to exploitation and instability.

94.  DHS's failure constitutes a violation of Plaintiffs' rights to due process under the Fifth Amendment of the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays:

1.  That the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order mandating a time certain to adjudicate Plaintiffs' respective Form I-918

Petitions or place Plaintiff BHARATKUMAR  and Plaintiff HIRALBEN on the U visa waitlist for prioritization of their respective Petitions during the new fiscal year.

2.    In the alternative, that the Court compel Defendants, and those acting under them, to perform their duty to adjudicate Plaintiffs' respective Form I-918 Petitions immediately or alternatively prioritizing the adjudication of their respective Petitions when the U visa cap resets at the start of the new fiscal year.

3.    Declare that USCIS's failure to timely implement the U visa program from 2000 to 2009 constitutes unlawful agency inaction, causing unjustified harm to pre-2009 applicants, and entitles Plaintiffs to retroactive relief

4.     Declare that USCIS's unreasonable delays in processing Plaintiffs' U visa Petitions violates the Administrative Procedure Act, 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

5.    Order USCIS to provide full U visa adjudication of Plaintiffs' respective Form I-918 Petitions, or in the alternative, place Plaintiff BHARATKUMAR and Plaintiff HIRALBEN on the U visa waitlist, guaranteeing the prioritization of their respective Petitions at the beginning of the new fiscal year when the U visa cap is reset.

6.     Enjoin USCIS from relying on its FIFO processing defense, allowing for discovery where evidence will show deviation from FIFO procedures;

7.    Declare that Plaintiffs are eligible to affirmatively apply for non-LPR cancellation of removal, without the requirement of being placed in removal proceedings.

8.    Order USCIS to recognize and credit Plaintiffs for time spent under "U interim relief", including deferred action and employment authorization, towards eligibility for adjustment of status.

9. Declare that time spent in deferred action while awaiting U visa adjudication shall be counted toward the three-year continuous physical presence requirement for lawful permanent residence under INA § 245(m).

10. Grant such other and further relief as the Court deems just, proper, and equitable.

11. Finally, that the Court award reasonable attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504, and such other and future relief as this Court deems proper under the circumstances.

Date:  May 12, 2025                              Respectfully submitted,

 */s/ Joseph Milburn*
**Joseph Milburn, Esq.**
**JEELANI LAW FIRM, PLC**
**3701 W. Algonquin Road, Suite 630**
**Rolling Meadows, IL 60008**
**joe@jeelani-law.com**
**Phone:(312) 767-9030**
**Fax:(312) 549-9981**
***Counsel for Plaintiffs***

*/s/ Gabriela Perez-Dumois*
**Gabriela Perez-Dumois, Esq.**
**Fla. Bar No. 118378**
***Of Counsel for Jeelani Law Firm***
**Blacksten, Zelaya & Perez**
**2514 Hollywood Blvd., Suite 308**
**Hollywood, FL 33020**
**Tel./Fax: 754-799-4400**
***Local Counsel for Plaintiffs***